# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

RAQUEL ESCALANTE, individually and on behalf of her daughter minor B.E.,

    Plaintiffs,

v.

LIFEPOINT HOSPITAL INC., d/b/a WESTERN PLAINS MEDICAL COMPLEX, et al.,

    Defendants.

Case No. 2:17-cv-02035-HLT

## MEMORANDUM AND ORDER

This is a medical malpractice action brought by Plaintiff Raquel Escalante, individually and on behalf of her minor child, B.E., seeking recovery for injuries sustained by B.E. during birth. Before the Court are several motions filed by Plaintiffs and the remaining Defendant (physician Tanya Williams)[1]: Defendant's motion for partial summary judgment (Doc. 131), Plaintiffs' motion for extension of time to file an opposition to Defendant's motion for partial summary judgment (Doc. 141), Defendant's motion to exclude testimony from vocational expert Michael Dreiling (Doc. 119), and Plaintiffs' motion to exclude certain defense expert testimony regarding the cause of B.E.'s injuries (Doc. 133).

After a detailed review, the Court grants in part and denies in part Defendant's motion for partial summary judgment. The Court grants Defendant's motion with respect to Plaintiffs' claim for out-of-pocket expenses, including medical-related travel expenses. The Court, however, finds summary judgment is inappropriate on Plaintiffs' claim for past medical expenses. The Court

---

[1] The other defendants—LifePoint Hospital Inc. d/b/a Western Plains Medical Complex; Dodge City Medical Center, Chtd.; Family Practice Associates of Western Kansas LLC; and Dr. Samir Shaath—were previously dismissed from this action. Docs. 63, 80, 89, 107.

further grants Plaintiffs' request for additional time to respond to the motion for partial summary judgment. Finally, the Court grants in part and denies in part Defendant's motion to exclude Mr. Dreiling's testimony and denies Plaintiffs' motion to exclude the defense expert causation testimony.

I.  **BACKGROUND**[2]

Plaintiff Raquel Escalante gave birth to her minor daughter B.E. in May 2010. Doc. 1. Plaintiffs contend the medical facilities and physicians involved in Plaintiffs' prenatal care and the subsequent birth of B.E. provided negligent medical care and treatment, causing B.E. to suffer a permanent brachial plexus injury. *Id.*

In 2017, Plaintiffs sued: the medical practices who treated them (Dodge City Medical Center, Chtd. and Family Practice Associates of Western Kansas LLC); the hospital where B.E. was delivered (LifePoint Hospital Inc. d/b/a Western Plains Medical Complex); and the physicians who provided prenatal and postnatal care and treatment to Plaintiffs (Dr. Samir Shaath and Dr. Tanya Williams). *Id.* In this action, Plaintiffs assert a single count of medical negligence. *Id.* Plaintiffs seek compensatory damages, including—pertinent for purposes of the disposition of these motions—lost wages for B.E., compensation for past medical expenses, and certain out-of-pocket expenses (which include travel for medical care). Doc. 128 at 9. The medical practices, the hospital, and Dr. Shaath have since been dismissed. Docs. 63, 80, 89, 107. Only Plaintiffs' claims against Dr. Williams (hereinafter referred to simply as "Defendant") remain for disposition.

---

[2] In reciting the facts relevant to Defendant's motion for partial summary judgment, the Court has set forth only those uncontroverted facts required to reach its decision and the Court construes those facts in the light most favorable to Plaintiffs as the non-moving party.

The Court previously entered a scheduling order[3] establishing deadlines for, among other things, fact and expert discovery, motions to exclude expert testimony, and dispositive motions. On January 28, 2019, pursuant to the deadline established in the scheduling order, Defendant moved to exclude testimony from Plaintiffs' vocational expert (Michael Dreiling). Doc. 119. Plaintiffs oppose this motion and also move to exclude Defendant's designated OB/GYN expert (Dr. Margaret O'Hara) and pediatric neurologist expert (Dr. Arthur Mandel) from testifying as to a certain theory of causation—that B.E.'s injuries occurred spontaneously "in utero" by natural "maternal forces." Doc. 133. Defendant has also moved for partial summary judgment on certain damage claims. Doc. 131.

## II. ANALYSIS

### A. Defendant's Motion for Partial Summary Judgment (Doc. 131)

Defendant seeks summary judgment on Plaintiffs' demands for (1) past medical expenses and (2) out-of-pocket expenses (including expenses related to travel for medical care). Doc. 131.[4]

---

[3] The original scheduling order was revised on December 20, 2017 and December 5, 2018. Docs. 36, 65, 112.

[4] The Court notes that Plaintiffs did not file their opposition to Defendant's motion for partial summary judgment by the deadline for doing so (March 21, 2019, *see* D. KAN. R. 6.1(d)(2) (responses to dispositive motions must be filed and served within 21 days)). Rather, Plaintiffs filed their opposition on March 26, 2019 and, on April 10, 2019, belatedly moved for an after-the-fact extension of time to file that opposition. Doc. 141. Defendant opposes this request for extension as untimely and argues the Court should grant Defendant's motion for partial summary judgment as uncontested. Docs. 142, 144. District of Kansas Rule 7.4(b) provides that, absent a showing of excusable neglect, a party or attorney who does not timely respond to a motion waives the right to later do so. D. KAN. R. 7.4(b). Although the Court is hesitant to reward a lack of diligence, the Court nonetheless finds the circumstances warrant granting Plaintiffs' motion for extension here. As District of Kansas Rule 7.4(b) indicates, a district court may, in its discretion, consider an untimely filing where the failure to timely act was the result of excusable neglect. *See* FED. R. CIV. P. 6(b); *Essence, Inc. v. City of Fed. Heights*, 285 F.3d 1272, 1288 n.14 (10th Cir. 2002). The Court finds that consideration of the pertinent factors—including the relatively minimal length of delay by Plaintiffs in responding to Defendant's motion (five days), the lack of any impact on these proceedings occasioned by that delay, the reasons provided by Plaintiffs for the delay, and the risk of prejudice to Plaintiffs were the Court to disregard their filing and consider Defendant's motion as unopposed—justifies granting Plaintiffs' request for extension. *See Secure Techs. Int'l v. Block Spam Now, LLC*, 2004 WL 2005787, at *2 (D. Kan. 2004) ("In determining whether the excusable neglect standard is met, courts should consider all relevant circumstances, including (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith."). The Court therefore grants Plaintiffs' motion for extension of time and considers their opposition to Defendant's motion for partial summary judgment in its analysis.

Defendant contends summary judgment must be granted because Plaintiffs cannot meet their burden of proof on these claims of damages due to their alleged failure to provide any evidence to support these claims—and, specifically, their failure to tender a computation of damages as required by Federal Rule of Civil Procedure 26. Doc. 132 at 2. For the following reasons, the Court grants Defendant's motion as it pertains to Plaintiffs' alleged out-of-pocket expenses. But the Court denies Defendant's request for summary judgment on Plaintiffs' claim for past medical expenses.

### 1. Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In applying this standard, courts must view the facts and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### 2. Past Medical Expenses

The Court first addresses the parties' arguments with respect to Plaintiffs' claim for past medical expenses. As set forth above, Defendant's motion for summary judgment focuses on alleged discovery violations by Plaintiffs for not disclosing computations of their damages, including their damages for past medical expenses. Doc. 132 at 2.

Rule 26(a)(1)(A)(iii) requires any party claiming damages or other monetary relief, without awaiting a discovery request, to disclose "a computation of each category of damages . . . [and]

the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based." FED. R. CIV. P. 26(a)(1)(A)(iii). This rule, by its terms, "requires more than providing—without any explanation—undifferentiated financial statements; it requires a 'computation,' supported by documents." 8A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2053 (3d ed. 2018) (quoting *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006)). Where a party fails to provide information required by Rule 26(a), Rule 37(c)(1) provides that the party is not allowed to use that information in a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless. FED. R. CIV. P. 37(c)(1).

Plaintiffs therefore had an obligation to provide a computation of each category of their damages along with supporting documentation. In their Rule 26 disclosures, served April 13, 2017, Plaintiffs identified their damages, in pertinent part, as follows:

> Plaintiff's damages include economic and non-economic damages. Plaintiff is currently requesting specific documents from various third party entities to substantiate and provide an itemized computation of damages. These damages will also likely be the source of expert opinion testimony. As soon as appropriate documentation is received, Plaintiff will produce a supplemental computation of damages for distribution to Defendants itemizing damages.

Doc. 132-1 at 5. As indicated by their response, Plaintiffs did not provide a computation or supporting documents with their Rule 26 disclosures. During discovery, Defendant propounded interrogatories requesting (among other things) that Plaintiffs (1) itemize each medical expense they claim in this case, and (2) set forth all damages they claim and, further, itemize those damages and provide a total damages figure. Doc. 132-2 at 23, 25. In response, Plaintiffs directed Defendant to the billing records and stated that they had not yet calculated their damages but would supplement. Doc. 132-3 at 6-7. But, despite serving supplemental interrogatory responses,

5

Plaintiffs still did not provide such a calculation. Doc. 132-4 at 2. Plaintiffs did provide a medical release authorizing Defendant to obtain Plaintiffs' billing records but did not provide copies of the bills themselves, claiming the bills were lost in a house fire. Doc. 132-5 at 1. In the pretrial order dated February 22, 2019, Plaintiffs stated, in pertinent part, that they seek past medical expenses in the amount of $131,045.00. Doc. 128 at 9. But no calculation of past medical expenses was provided by Plaintiffs.[5]

Plaintiffs therefore failed to comply with Rule 26(a)(1)(A)(iii). Their belated disclosure of their computation of damages—done only when faced with Defendant's request for summary judgment—does not excuse their failure to comply with the Rules. And although Plaintiffs argue they met their burden by providing the medical authorization form to Defendant—which they claim allowed Defendant to obtain the records needed to calculate their damages (Doc. 139 at 12)—the Court disagrees. Plaintiffs may not ignore their disclosure obligations simply because Defendant has collected Plaintiffs' billing records. *See, e.g.*, *Stevens v. Novartis Pharm. Corp.*, 2013 WL 11332736, at *2 (D. Kan. 2013); *Lathon v. Wal-Mart Stores E., LP*, 2009 WL 1810006, at *4 (E.D. Va. 2009) (holding that providing the defendant a signed authorization to obtain medical bills from providers does not satisfy the plaintiff's duties under Rule 26). Rule 26 requires <u>Plaintiffs</u> to compute damages, not Defendant.

But Defendant is not without blame. Defendant did not act upon this failure and has therefore arguably waived any argument regarding the insufficiency of Plaintiffs' disclosure and discovery responses. District of Kansas Rule 37.1(b) provides:

> Any motion to compel discovery in compliance with D. Kan. Rules 7.1 and 37.2 must be filed and served within 30 days of the default or service of the response, answer, or objection that is the subject of

---

[5] Plaintiffs have now belatedly provided a computation of their damages with their opposition to Defendant's motion for partial summary judgment. Doc. 139-6.

> the motion, unless the court extends the time for filing such motion for good cause. Otherwise, the objection to the default, response, answer, or objection is waived.

D. KAN. R. 37.1(b). "[T]he thirty-day period in which to file a motion to compel is triggered when specific information first leading to a dispute is discovered, and this period is not tolled while the parties continue to confer on discovery issues." *Energy Intelligence Grp., Inc. v. CHS McPherson Refinery, Inc.*, 2017 WL 2774681, at *3 (D. Kan. 2017). Defendant did not move to compel[6] and cannot now ambush Plaintiffs at the summary judgment stage without having raised these issues earlier. Defendant could have, and should have, submitted this issue to the Court long before this point in the proceedings.

In sum, the Court concludes Plaintiffs did not timely disclose a computation of their damages as required by Rule 26(a)(1)(A)(iii). But Defendant was aware of this shortcoming, could have timely sought appropriate relief (such as that contemplated by Rule 37) or raised the issue, yet failed to do so. Defendant now raises this issue with the Court for the first time on summary judgment, essentially asking that the Court sanction Plaintiffs via this motion for the discovery violation, which is improper. The Court therefore denies Defendant's request for summary judgment on Plaintiffs' claim for past medical expenses. However, cognizant of the late timing of Plaintiffs' disclosure, the Court would entertain a motion seeking limited discovery <u>purely related to</u> the computation of Plaintiffs' damages, to the extent Defendant believes such relief is warranted, makes an appropriate showing, and promptly raises the issue with the Court.

---

[6] The Court notes that, although Defendant (along with since-dismissed-defendant Family Practice Associates of Western Kansas LLC) filed a motion to compel on September 6, 2017, Defendant later withdrew that motion and—based on the Court's review of the docket—did not take any further action related to Plaintiffs' failure to provide a calculation of their damages until raising the issue in this motion. Docs. 56, 57. Though the Court recognizes that—according to the documents associated with the withdrawn motion—the parties were attempting to work through the discovery issues, the case law is clear that such discussions do not toll the thirty-day deadline set forth in District of Kansas Rule 37.1(b). *See Energy Intelligence Grp.*, 2017 WL 2774681, at *3.

### 3. Out-of-Pocket Expenses

The Court next turns to Defendant's request for summary judgment on Plaintiffs' claim for out-of-pocket expenses—including expenses for travel related to medical care. Defendant again couches her request for summary judgment on Plaintiffs' failure to produce any evidence to support such damages. Doc. 132 at 2. Plaintiffs have not disclosed the amount of out-of-pocket expenses they seek in this action and, in fact, never indicated they had incurred travel costs—or other out-of-pocket expenses—during written or deposition discovery. *Id.* at 6. The pretrial order provides that Plaintiffs seek "[o]ut of pocket expenses: including travel for medical care" but, unlike with their claim for past medical expenses, Plaintiffs do not provide an amount of the out-of-pocket expenses they seek. Doc. 128 at 9. And out-of-pocket expenses are not included in the belated calculation Plaintiffs attach to their opposition. Doc. 139-6.

Regardless of the merits of Plaintiffs' claim for out-of-pocket expenses, however, Plaintiffs do not respond to Defendant's arguments in favor of summary judgment on this claim. Doc. 139. Plaintiffs' lack of response to this argument is basis for summary judgment alone. *See, e.g.*, *Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 768-69 (10th Cir. 2001) (affirming district court's ruling that plaintiff abandoned claim by failing to address it in response to motion for summary judgment); *Maestas v. Segura*, 416 F.3d 1182, 1190 n.9 (10th Cir. 2005) (finding plaintiffs abandoned claims by failing to "seriously address them" in their appellate brief). Given this lack of response, the Court concludes Plaintiffs have abandoned their claim for out-of-pocket expenses, and accordingly grants Defendant's motion for summary judgment as it pertains to Plaintiffs' alleged out-of-pocket expenses.

**B. Defendant's Motion to Exclude Testimony of Michael Dreiling (Doc. 119)**

The Court next turns to Defendant's motion to exclude testimony from Plaintiffs' designated vocational expert, Michael Dreiling. For the reasons explained below, the Court grants in part and denies in part Defendant's motion to exclude Mr. Dreiling's proffered testimony.

**1. Standard**

Federal Rule of Evidence 702 governs the admissibility of expert testimony and imposes upon the district court a "gatekeeping obligation" to ensure that expert testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). A court's gatekeeping function, however, does not replace the traditional adversary system and the role of the jury. *Cohen v. Lockwood*, 2004 WL 763961, at *2 (D. Kan. 2004). Where there are questions related to the bases and sources of an expert's opinion, these issues go to the weight to be assigned to that opinion—rather than admissibility—and are for the trier of fact to determine. *Id.* The burden is on the party offering the expert testimony to prove its admissibility. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

**2. Analysis**

As set forth above, Plaintiffs designate Mr. Dreiling as a vocational expert. Plaintiffs offer testimony from Mr. Dreiling to support their claim for future lost income damages. Doc. 119-1 at 4. Mr. Dreiling is a vocational consultant and, in this case, used employment and earnings data published in the American Community Survey, prepared by the U.S. Census Bureau, to calculate B.E.'s future lost income. Doc. 119-2; Doc. 119-4. His methodology involved comparing the employment rates and incomes of self-care disabled individuals with their non-disabled counterparts. Doc. 119-2 at 6. Mr. Dreiling also reviewed Plaintiffs' medical treatment records,

the expert life-care plan prepared by Tracy Wingate, and transcripts from the depositions of B.E.'s parents to gain an understanding of their educational and work backgrounds. *Id.* at 1. Based on his review, Mr. Dreiling intends to opine that B.E.'s injury and the resultant limitations will negatively impact her ability to obtain employment and earn wages. *Id.* Mr. Dreiling further quantifies the amount of lost income B.E. will suffer as a result of the brachial plexus injury. *Id.*

In her motion to exclude Mr. Dreiling's testimony, Defendant does not attack Mr. Dreiling's qualifications as a vocational expert. Doc. 119. Rather, Defendant moves to exclude Mr. Dreiling's testimony on the basis that (1) his testimony is not based upon sufficient facts and data and (2) it is not the product of a reliable methodology. *Id.* Defendant essentially argues that Mr. Dreiling's proposed testimony is unreliable because it does not take into account B.E.'s individualized circumstances and relies on generalized nationwide statistics that are not sufficiently tied to the facts. *Id.*

The Court disagrees with some of the criticisms levied by Defendant in her motion. As discussed above, Mr. Dreiling does acknowledge B.E.'s personal circumstances. His report notes his consideration of materials specific to B.E., including her parents' work histories (the report specifically notes that jobs performed by her parents have relied on good physical abilities and on the use of upper extremities), her medical records, and her life-care plan. Doc. 119-2. And, although Mr. Dreiling does utilize nationwide statistics, he utilizes statistics <u>specific to</u> persons with a self-care disability and not just generalized disability statistics.[7] *Id.* at 6. For example, he uses statistics that indicate (1) the difference in employment percentages for non-institutionalized females who are self-care disabled versus those who are not self-care disabled, and (2) the

---

[7] The definition of "self-care disability" as used in these statistics is based on the question (asked of persons ages five or older) "does this person have difficulty dressing or bathing?" Doc. 119-2 at 6.

difference in median annual earnings of non-institutionalized persons who are self-care disabled versus those who are not self-care disabled. *Id.*

However, although the Court finds these statistics relevant and sufficiently reliable to aid the jury, the Court agrees with Defendant that Mr. Dreiling's opinions go too far in two respects: (1) in drawing a conclusion regarding <u>all</u> self-care disabled individuals based on these statistics, and (2) in his specific conclusion regarding B.E.'s future employability and potential income. On the first issue, based on these statistics alone, Mr. Dreiling concludes that "individuals with a medical disability impacting on self-care issues" experience "a significant negative impact on their employability in the labor market" and that "when comparing an individual with a self-care disability to an individual without a self-care disability, the loss of annual earnings is $7,000." *Id.* Mr. Dreiling provides no rationale for his apparent application of "median" statistics to conclude that <u>all</u> self-care disabled individuals suffer annual lost earnings of exactly $7,000.

And his specific conclusion as to B.E. suffers from the same deficiency. His report states that "the medical disability that [B.E.] has dealt with and will have to deal with, as she pursues her educational activities and vocational and work activities, will present additional concerns." *Id.* at 5. He notes that B.E. "will have fewer vocational opportunities and fewer employment opportunities, based upon her medical disability throughout her work career." *Id.* And he finally concludes that "[f]rom age 21 through age 64, which is 43 years, the total loss over [B.E.'s] work career would be $301,000." *Id.* at 6. But, in reaching these conclusions, he does not consider B.E.'s specific employability (either generally or with regard to any specific occupations that B.E. would be excluded from). Mr. Dreiling also does not provide any rationale for again utilizing the "median" statistics to conclude that B.E. will suffer annual lost earnings of exactly $7,000 per year. Rather, he simply adopts the median number without regard to her specific circumstances.

In *Dorman v. Anne Arundel Medical Center*, 2018 WL 2087393 (D. Md. 2018)—in which the plaintiff similarly suffered a brachial plexus injury sustained at birth—the district court excluded expert testimony suffering from similar flaws.

In sum, the Court agrees that portions of Mr. Dreiling's proffered testimony are flawed but declines to exclude the entirety of his testimony. The Court finds that it will be useful for the jury to have some economic data upon which to make its damages calculation. For the reasons set forth above, Mr. Dreiling is therefore permitted to testify regarding: (1) the definition of self-care disability as used in the U.S. Census Bureau's American Community Survey; (2) the percentage of non-institutionalized self-care disabled females, ages 21 to 64, with a high-school diploma or equivalent in the United States who were employed in 2016; (3) the median annual earnings of non-institutionalized self-care disabled persons, ages 21 to 64, in the United States who were working full-time/full year in 2016; and (4) the median annual earnings of non-institutionalized persons, ages 21 to 64, without a self-care disability in the United States who were working full-time/full year in 2016.

Mr. Dreiling is not, however, permitted to testify that <u>all</u> individuals with a self-care disability—and/or B.E. specifically—have fewer vocational opportunities and fewer employment opportunities than their non-self-care-disabled counterparts. Mr. Dreiling is also prohibited from testifying that all self-care disabled individuals—and/or B.E. specifically—suffer annual lost earnings of exactly $7,000.

**C. Plaintiffs' Motion to Exclude Defense Expert Causation Testimony (Doc. 133)**

Finally, the Court addresses Plaintiffs' motion to exclude Defendant's experts—specifically, Dr. Margaret O'Hara (Defendant's OB/GYN expert) and Dr. Arthur Mandel

(Defendant's pediatric neurologist expert)—from offering testimony that B.E.'s brachial plexus injury occurred spontaneously "in utero" by natural "maternal forces." Doc. 133.

Because the applicable standard for the exclusion of expert testimony is set forth in Part II.B.1, *supra*, the Court proceeds directly to its analysis of the merits of Plaintiffs' motion. Plaintiffs challenge the admissibility of the testimony primarily on the basis that it is unreliable. *Id.* Specifically, Plaintiffs argue such testimony is speculative and that this theory of causation is unscientific, unreliable, and not supported by the facts. *Id.*

The Court disagrees with Plaintiffs and finds that exclusion of the challenged defense expert causation testimony is not warranted. First, contrary to Plaintiffs' assertions, the Court finds both Dr. O'Hara and Dr. Mandel qualified to testify here. To be qualified, an expert should possess "the 'knowledge, skill, experience, training, or education' necessary to render an opinion on the subject." *S. Star Cent. Gas Pipeline, Inc. v. 120 Acres Located in Rice Cty., Kan.*, 2012 WL 984271, at *3 (D. Kan. 2012) (quoting *Nacchio*, 555 F.3d at 1241). An expert is qualified as long as he or she "stays 'within the reasonable confines of his subject area.'" *Id.* (quoting *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001)). "'[A] lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight.'" *Id.* (quoting *Ralston*, 275 F.3d at 970).

Dr. O'Hara and Dr. Mandel are both expert witnesses designated by Defendant to give causation opinions in this case. Dr. O'Hara is a maternal fetal specialist and OB/GYN. Doc. 136-10. She has education, training, and experience in prenatal and postnatal care—including delivering babies and dealing with high risk pregnancies—and is also trained in the management of shoulder dystocia, specifically including brachial plexus injury. Doc. 136-5 at 4-5. Dr. Mandel, meanwhile, is a pediatric neurologist who has been educated in, and has experience with, treating

children with brachial plexus injuries. Doc. 136-13; Doc. 136-14 at 2-6. The Court finds that the testimony proffered by Dr. O'Hara and Dr. Mandel is well within the reasonable confines of their subject areas. Plaintiffs' arguments that Dr. O'Hara and Dr. Mandel are not "qualified" appear to primarily focus on their contention that Dr. O'Hara and Dr. Mandel are not specialists in the intrauterine or "in utero maternal force" causes of brachial plexus injury. Doc. 133. But to the extent this is accurate, this does not justify exclusion of their testimony and, rather, goes to the weight and credibility that should be afforded that testimony, which is for the jury to decide. *See S. Star Cent. Gas Pipeline*, 2012 WL 984271, at *3.

Second, the Court rejects the argument that Dr. O'Hara and Dr. Mandel cannot opine regarding alternative explanations (i.e., other than negligence) for Plaintiffs' injuries. Here, Plaintiffs—not Defendant—bear the burden to establish with the requisite degree of certainty that B.E.'s brachial plexus injury is ultimately the result of medical negligence. *See Cohen*, 2004 WL 763961, at *5 (holding that "the burden is on plaintiff to establish with the requisite degree of certainty that her condition was a result of the . . . surgery" and that "[a] reasonable defense presentation would be one that calls the certainty of that conclusion into question"). Dr. O'Hara and Dr. Mandel's testimony is not being offered by Defendant to establish causation but, rather, to counter Plaintiffs' contentions regarding the cause of B.E.'s injuries, which is reasonable. *See id.*; *see also Barcus v. Phoenix Ins. Co.*, 2019 WL 330516, at *2 (D. Kan. 2019).

Third, the Court agrees with Defendant that the weight of the authority supports the admission of the challenged testimony. In her briefing, Defendant offers a number of cases admitting defense expert testimony on "intrauterine" and "natural forces of labor" causes of brachial plexus injury. Though not controlling, the Court finds the rationale in these opinions persuasive. In *Potter ex rel. Potter v. Bowman*—a medical malpractice case cited by Defendant—

the plaintiffs contended that the defendant doctor negligently caused a brachial plexus injury of the baby's shoulder during delivery by applying excessive lateral traction to the baby's head to relieve a shoulder dystocia (a condition in which the baby's shoulder becomes stuck during birth). 2006 WL 3760267, at *2 (D. Colo. 2006). The defendant denied any negligence and claimed the baby was injured as a result of the birthing process itself. *Id.* The plaintiffs filed a motion challenging the admissibility of the opinions of the expert witnesses designated to testify regarding this causation theory. *Id.* The district court ultimately found that the challenged testimony—that "maternal propulsive forces," not negligence, were the most likely cause of the baby's injuries— was admissible. *Id.* at *2-3.

Courts in this Circuit have therefore found testimony similar to that proffered by Dr. O'Hara and Dr. Mandel admissible. And other Circuits have similarly admitted defense expert testimony on a natural forces of labor theory in a permanent brachial plexus injury case. *See Clark ex rel. Clark v. Hendrick*, 150 F.3d 912, 915 (8th Cir. 1998) (holding that defendant physician's expert testimony as to possible causes of brachial plexus injuries was admissible). For all of these reasons, the Court denies Plaintiffs' motion to exclude testimony from defense experts Dr. O'Hara and Dr. Mandel that B.E.'s brachial plexus injury occurred spontaneously "in utero" by natural "maternal forces."

### III. CONCLUSION

THE COURT THEREFORE ORDERS that Defendant's Motion for Partial Summary Judgment (Doc. 131) is GRANTED IN PART and DENIED IN PART as set forth in Part II.A, *supra*.

THE COURT FURTHER ORDERS that Plaintiffs' Motion for Extension of Time to File their Opposition to Defendant's Motion for Partial Summary Judgment (Doc. 141) is GRANTED.

THE COURT FURTHER ORDERS that Defendant's Motion to Exclude Testimony of Michael J. Dreiling (Doc. 119) is GRANTED IN PART and DENIED IN PART as set forth in Part II.B, *supra*.

THE COURT FURTHER ORDERS that Plaintiffs' Motion to Exclude Defendant's Experts from Testifying that B.E.'s Permanent Brachial Plexus Injury Was Caused by "In Utero" or "Maternal Forces" of Labor (Doc. 133) is DENIED.

IT IS SO ORDERED.

Dated: July 1, 2019

/s/ Holly L. Teeter
HOLLY L. TEETER
UNITED STATES DISTRICT JUDGE